IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-827-SLR |
| | ) | |
| CELLCO PARTNERSHIP, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-829-SLR |
| | ) | |
| CNN INTERACTIVE GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| CYBERFONE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-831-SLR |
| | ) | |
| AMAZON.COM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Richard D. Kirk, Esquire, Stephen B. Brauerman, Esquire and Vanessa R. Tiradentes, Esquire of Bayard, PA, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Marc A. Fenster, Esquire, Bruce D. Kuyper, Esquire, Eric J. Carsten, Esquire and Fredricka Ung, Esquire of Russ, August & Kabat.

Jack B. Blumenfeld, Esquire, Karen Jacobs Louden, Esquire and Paul Saindon, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for

Moving Defendants.[1]

_____

**MEMORANDUM OPINION**

Dated: August 16, 2012
Wilmington, Delaware

_____

[1] Because the parties have authorized and stipulated to having Morris, Nichols, Arsht & Tunnell LLP file this motion (D.I. 267 in 11-827), and because other counsel have not been identified in the associated briefs, the court does not list them here.

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff CyberFone Systems, LLC ("CyberFone" or "plaintiff"), previously named

LVL Patent Group, LLC, is the assignee of U.S. Patent Nos. 6,044,382, 7,334,024 and

8,019,060 ("the '060 patent") relating to telecommunications technologies.  CyberFone

asserted infringement of combinations of these patents against a total of 175

defendants and 970 accused products across a span of 21 related cases.  The '060

patent is asserted in all but five cases and is, in some instances, the only patent at

issue.

On April 30, 2012, the court denied certain motions:  (1) to sever and/or dismiss

under Federal Rule of Civil Procedure 20; (2) to stay claims; (3) to dismiss direct

infringement claims on the merits or based on the sufficiency of the pleadings; (4) to

dismiss induced infringement claims based on the lack of pleading pre-suit knowledge.

The court commensurately granted several motions to dismiss claims of contributory

infringement.[2]  (D.I. 183)[3]

Discovery is underway and will conclude in April 2013.  (D.I. 154)  A status

conference was held on May 15, 2012, at which time the court granted defendants

permission to file an early summary judgment motion related to their contention that the

'060 patent is invalid under 35 U.S.C. § 101.  (D.I. 199)  That motion is presently before

---

[2]  There were 21 motions in total; based on the volume of motions, the court does not describe in detail their contents here (nor whether each was denied, denied in part, denied as moot, granted in part and denied in part, etcetera) and, instead, refers back to its prior order for the relevant details. (Civ. No. 11-827, D.I. 183)

[3]  Unless provided otherwise, the court hereinafter references docket item numbers in Civ. No. 11-827.

the court.  (D.I. 227 in 11-827; D.I. 147 in 11-829; D.I. 127 in 11-831)[4]

## II. BACKGROUND

The '060 patent, entitled "Telephone/transaction entry device and system for entering transaction data into databases," was filed September 4, 2007 at U.S. Patent Application No. 11/849,952; it claims priority through a chain of continuation, divisional and continuation in part applications to May 19, 1995.  The '060 patent issued September 13, 2011 and lists Rocco L. Martino as its sole inventor.

The invention of the '060 patent is described as a system for automatically capturing data at a point of transaction (e.g., a telephone in "transaction entry mode") and transmitting the data to one or more databases for processing and storage.  ('060 patent, col. 1:27-42)  A transaction entry device formats input data from a user into a data transaction, which is then transferred to an external (local or remote) database server.  (Id., col. 2:44-48; col. 3:12-15)  The server "explodes" the data transaction into its component parts "on a system-specific basis so that each component part has a one-to-one correspondence with a file."  (Id., col. 2:47-51, col. 3:49-55)  The specification states that "[t]he telephone/transaction entry device and the associated system for storing transaction data in accordance with the invention is unique in that it separates the user from the database and provides a simple, user friendly way to enter transaction data without requiring a local operating system to run various application programs."  (Id., col. 4:29-34)  Further, "[s]ince all data is entered as data transactions determined by templates tailored to particular applications, the user applications may

---

[4]  Plaintiff's motion for leave to file a sur-reply is granted.  (D.I. 262 in 11-827; D.I. 188 in 11-829; D.I. 160 in 11-831)

be generalized so that no unique user application programs need be written when a new application is added." (*Id.*, col. 4:34-38)   The "system for entering data transactions into databases in accordance with the invention" is described in figure 1 of the '060 patent, reproduced below.



Figure 3 of the '060 patent, reproduced below, illustrates a data transaction being "exploded" into its different subparts for storage "in a database-specific and file-specific location." (*Id.*, col. 5:18-20)

**FIG.3**



The '060 patent contains three independent claims: method claims 1 and 13, and system claim 18. These claims are reproduced below:

1. A method, comprising:

obtaining data transaction information entered on a telephone from a single transmission from said telephone;

forming a plurality of different exploded data transactions for the single transmission, said plurality of different exploded data transaction[s] indicative of a single data transaction, each of said exploded data transactions having different data that is intended for a different destination that is included as part of the exploded data transactions, and each of said exploded data transactions formed based on said data transaction information from said single transmission, so that different data from the single data transmission is separated and sent to different destinations; and

sending said different exploded data transactions over a channel to said different destinations, all based on said data transaction information entered in said single transmission.

13. A method, comprising:

obtaining data transaction information;

based on said data transaction information,

forming a plurality of different, exploded data transactions, said plurality of different exploded data transactions indicative of a single data transaction

4

represented by said data transaction information, each of the exploded transactions having different data and having a different destination, where destination information indicative of multiple destinations for said exploded data transactions is included as part of the single data transaction, and each data transaction formed based on said data transaction information;

sending said different exploded data transactions over a channel to respective destinations, each respective destination represented by different destination information; and

receiving data from at least one of said destinations, which data is used as part of the data transaction, and is sent to a second of said destinations different than said one of said destinations, and where said second of said destination[s] is represented by second destination information in said single data transaction.

18.  A data transaction system comprising:

a first transaction tier, operating to capture a data transaction from a user, said data transaction including at least one request for information from at least one remote server;

a second transaction tier, operating to convert the data transaction into multiple different requests, based on said request for information, where said second tier converts, from a single data transaction from the user, a plurality of different exploded data transaction[s] indic ative of said single data transaction each of said exploded data transactions having different data and a different destination that is included as part of the exploded data transactions, and each of said exploded data transaction[s] formed based on said data transaction information from said single transmission and representing said different data in the single transmission that is intended for different servers; and

a third tier, further exploding at least plural of requests from said second transaction tier into third tier transaction requests for specific information from specific remote servers, where each of the third tier transaction requests is specific to a specified application.

## III. STANDARD

A court shall grant summary judgment only if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. § 101 Caselaw

6

Section 101 provides that patentable subject matter extends to "new and useful process[es], machine[s], manufacture, or composition[s] of matter."  35 U.S.C. § 101. In 2008, the Federal Circuit issued its *en banc* decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ("*Bilski I*"), in which the majority held that the "machine-or-transformation test" ("MOTT") is the definitive inquiry governing patentability of a process claim.  *Id.* at 954-55, 959-60.  As articulated by the Supreme Court, the MOTT provides that a process is patent-eligible under § 101 if:

> (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing.  A claimed process involving a fundamental principle [such as an equation] that uses a particular machine or apparatus would not preempt uses of the principle that do not also use the specified machine or apparatus in the manner claimed.  And a claimed process that transforms a particular article to a specified different state or thing by applying a fundamental principle would not pre-empt the use of the principle to transform any other article, to transform the same article but in a manner not covered by the claim, or to do anything other than transform the specified article.

*Id.* at 954 (citing *Gottschalk v. Benson*, 409 U.S. 63, 70 (1972)).  In so holding, the *Bilski I* Court rejected the applicability of several other articulations of § 101 tests:  (1) the *Freeman-Walter-Abele* test, which consisted of determining both whether the claim recites an algorithm, and whether that algorithm is applied to a physical element or process step; and (2) the "useful, concrete and tangible result" test, which focused on preventing patents on mathematical or other principles.  *Id.* at 958-60.

On appeal, the Supreme Court held that the MOTT is not the exclusive test for determining the patent eligibility of a process.  *Bilski v. Kappos*, 130 S. Ct. 3218, 3226-27 (2010) ("*Bilski II*").  However, the MOTT remains "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes

7

under § 101." *Id.* at 3227.  While the Supreme Court declined to further define what constitutes a patentable process, *id.* at 3231, it noted that its precedents "provide three specific exceptions to § 101's broad patent-eligibility principles:  'laws of nature, physical phenomena, and abstract ideas.'"  *Id.* at 3225 (citing *Chakrabarty*, 447 U.S. 303, 308 (1980)).  Whether the asserted claims are invalid for failure to claim statutory subject matter is a question of law that may be informed by subsidiary factual issues. *See In re Comiskey*, 554 F.3d 967, 976 (Fed. Cir. 2009) (citations omitted).

## B.  Claim Construction

The court first addresses the issue of whether claim construction is required before undertaking a § 101 analysis.  In *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*, No. 2011-1467, 2012 WL 3037176, at \*5 (Fed. Cir. July 26, 2012), the Federal Circuit was recently confronted with this same issue.  While noting that it will "ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis" since "the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter," the Federal Circuit "perceive[d] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Id.*

The court notes that, while plaintiff in this case did argue that claim construction should occur prior to a § 101 analysis (D.I. 250 at 5), plaintiff did not explain how claim construction might alter such analysis.  At oral argument, plaintiff also failed to articulate a compelling reason why the court would lack a full understanding of the claimed subject matter if it did not first construe the claims.  In light of this and the foregoing

case law, the court concludes that it may proceed without the benefit of claim construction.

### C. The Machine or Transformation Test

#### 1. The parties' positions

Defendants argue, in support of their motion, that:

> The '060 patent merely claims the abstract concept of gathering, organizing and forwarding data. The '060 claims are not tied to any specific machine . . . and do not involve the transformation of any article. . . . Instead, according to CyberFone, the claims encompass collecting, organizing and forwarding data regarding virtually any transaction in any field of commercial endeavor. Accordingly, [§ 101] precludes CyberFone from preventing others from practicing this undeniably abstract concept of collecting, organizing and forwarding information about a transaction.

(D.I. 228 at 3)

Plaintiff responds by arguing that claim 1 meets both the transformation and machine prongs of the MOTT. According to plaintiff, the transformation prong is met because claim 1 requires that a data transaction be "transformed into multiple data transactions and sent over a channel to different destinations. The sending of these exploded data transactions effects a transformation in the devices that receive them." (D.I. 250 at 13) In other words, plaintiff appears to argue that: 1) the data is transformed by being converted into data subsets; and 2) a storage device is changed when it incorporates new data. The machine test, plaintiff asserts, is met because "the telephone is a specific machine that plays a significant part in permitting claim 1 of the '060 patent to be performed." (D.I. 250 at 10) Specifically, plaintiff notes that the telephone is responsible for obtaining data transactions. (*Id.* at 11-12) Plaintiff also argues that "the sending of exploded data transactions over a channel . . . also requires

9

a machine."[5]  (*Id.* at 13)

## 2. Claim 1's component parts

As plaintiff notes, and the Federal Circuit emphasized in *CLS Bank International v. Alice Corp. Pty. Ltd.*, No. 2011-1301, 2012 WL 2708400, at *9 (Fed Cir. July 9, 2012), "'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.' Any claim can be stripped down, or simplified, removing all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *Id.* (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1293 (2012)).  However,

> nothing in the Supreme Court's precedent, nor in [the Federal Circuit's], allows a court to go hunting for abstractions by ignoring the concrete, palpable, tangible, and otherwise not abstract invention the patentee actually claims.   It is fundamentally improper to paraphrase a claim in overly simplistic generalities in assessing whether the claim falls under the limited 'abstract ideas' exception to patent eligibility under 35 U.S.C. § 101.  Patent eligibility must be evaluated based on what the claims recite, not merely on the ideas upon which they are premised.

*Id.*

Cognizant of this admonition, the court turns to claim 1.[6]  Claim 1 recites a three step process.  The first entails "obtaining data transaction information entered on a

---

[5] Because plaintiff only summarily makes this argument and does not indicate **what** type of machine is required, the court addresses this argument no further.  *See Bilski I*, 545 F.3d at 961 ("[T]he use of a **specific** machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility") (emphasis added).

[6] In its brief, plaintiff focuses solely on how claim 1 is patent-eligible under § 101.  (*See* D.I. 250 at 10-14 in 11-827)  No argument is made with respect to claims 13 or 18 despite defendants raising the ineligibility of those claims.  Given plaintiff's focus, the court deals only with claim 1.

telephone from a single transmission." In other words, the first step involves obtaining or capturing data. The second step entails "forming a plurality of different exploded transactions" from the single transmission. In other words, the second step involves the sorting or organizing of data into data subsets. The third and final step entails "sending said different exploded data transactions over a channel to different destinations." In other words, the last step involves sending data to a storage location. Analyzing and interpreting a claim by breaking it down into its relevant steps, as the court has done here, is consistent with Supreme Court precedent, see e.g. Prometheus, 132 S. Ct. at 1297-98, and consistent with the Federal Circuit's guidance in CLS, 2012 WL 2708400, at *9.

### 3. The transformation prong

Plaintiff's argument that the data and/or data storage devices are transformed is unpersuasive. As the Federal Circuit explained in CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1367 (Fed. Cir. 2011) (a case dealing with a method of detecting credit card fraud perpetrated over the internet), the "mere collection and organization of data regarding credit card numbers and Internet addresses is insufficient to meet the transformation prong of the [MOTT]." Likewise, no transformation can be said to have occurred in claim 1 via the second step where the data is organized into data subsets. See also Bancorp, 2012 WL 3037176, at *5 (affirming the district court's finding that "the claims do not effect a transformation, as they 'do not transform the raw data into anything other than more data and are not representations of any physically existing objects'"). The court also rejects plaintiff's

11

claim that the storage device is transformed when it receives the transmitted data.  The storage device is not transformed into a "different state or thing" by the mere receipt of additional electronic data.

### 4.  The machine prong

"[A] machine is a concrete thing, consisting of parts, or of certain devices and combination of devices.  This includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result." *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir 2009) (citations and quotations omitted).  Generally speaking, for a machine to make an otherwise unpatentable process patent eligible, it must place a meaningful limit on the scope of the claim and be integral to the process.  The court finds *Bancorp* and *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319, 1332 (Fed. Cir. 2010) instructive in this regard.

In *Bancorp*, where the asserted patents disclosed "specific formulae for determining the values required to manage a stable value protected life insurance policy," the district court granted summary judgment of invalidity under § 101.  *Bancorp*, 2012 WL 3037176, at *4.  Under the machine prong of the MOTT, the district court found that "the specified computer components are no more than objects on which the claimed methods operate, and that the central processor is nothing more than a general purpose computer programmed in an unspecified manner." *Id.*  In affirming the district court's findings, the Federal Circuit explained that

> the use of a computer in an otherwise patent ineligible process for no more
> than its most basic function—making calculations or computations—fails to

circumvent the prohibition against patenting abstract ideas and mental processes.   As we have explained, "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1333 (Fed. Cir. 2012).   To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.

*Id.* at *9-10.  Ultimately, the Federal Circuit concluded that "[t]he computer required by some of Bancorp's claims is employed only for its most basic function, the performance of repetitive calculations, and as such does not impose meaningful limits on the scope of those claims." *Id.* at *10.

In contrast to *Bancorp,* the Federal Circuit in *SiRF* found that a GPS receiver was "integral" to the claims at issue and, therefore, the MOTT was met.  *SiRF,* 601 F.3d at 1332.  As in *Bancorp,* the *SiRF* Court also emphasized that a machine will only "impose a meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *Id.* at 1333.  After noting how the GPS receiver was specifically involved in each step of the method, the Court concluded that "the use of the GPS receiver is essential to the operation of the claimed methods." *Id.*

It is apparent, when comparing *Bancorp* and *SiRF,* that a spectrum exists with respect to computer-based implementation limitations.  At one end of the spectrum is *Bancorp* and a general purpose computer that is generically performing calculations; at the other end is *SiRF* and a GPS receiver that performs specific operations essential to

13

the claimed methods.  In *CLS*, the Federal Circuit was again confronted with where a claim fell on this spectrum.  *CLS*, 2012 WL 2708400, at *1 ("This case presents, once again, the question of patent eligibility under 35 U.S.C. § 101 of an invention implemented by computers.").  The patents at issue in *CLS* described "a computerized trading platform for exchanging obligations in which a trusted third party settles obligations between a first and second party so as to eliminate 'settlement risk[,]" "settlement risk [being] the risk that only one party's obligation will be paid, leaving the other party without its principal." *Id.*  After specifically highlighting the relevant case law on the issue of computer usage and the MOTT, the Court summarized the spectrum in this way: "It can, thus, be appreciated that a claim that is drawn to a **specific way** of doing something with a computer is likely to be patent eligible whereas a claim to **nothing more than the idea** of doing that thing on a computer may not." *Id.* at *9.

In the present case, the telephone is the only machine plainly referenced in claim 1; it is also the only machine that plaintiff identifies with respect to its MOTT analysis.[7] Plaintiff argues that the telephone is involved in step one, i.e., the data capturing step. Inasmuch as this is plaintiff's argument, the telephone is not an integral part of the claim; it simply functions as a means for collecting data whereas the real focus of the claim is the sorting and storing.   As the *Cybersource* Court explained, "mere [data-gathering] step[s] cannot make an otherwise nonstatutory claim statutory." *Cybersource*, 654 F.3d at 1370 (quotations and citations omitted).  In other words, the use of a telephone to capture data does not make the abstract concepts of sorting and

---

[7] *See supra*, pg. 10, note 4.

storing data somehow patent-eligible.

To the extent that a machine is also involved in the sorting or organizing step (step two),[8] that machine exists on the *Bancorp* end of the spectrum. The machine is just a general purpose computing device being asked to do some unspecified sorting function. Claiming a generic "computer-aided" sorting process is insufficient under the machine prong of the MOTT. *See Dealertrack*, 674 F.3d at 1333. Essentially plaintiff has claimed nothing more than the idea of sorting via machine.

## D. Abstract Idea

Because the Supreme Court has found that the MOTT is not dispositive in a § 101 inquiry, the court more generally examines the abstract nature of claim 1. *See Cybersource*, 654 F.3d at 1371; *CLS*, 2012 WL 2708400, at *8. As the Federal Circuit has aptly noted, "the dividing line between patent ineligible abstract ideas and those that are not, remains elusive." *CLS*, 2012 WL 2708400, at *7. Nevertheless, the Court has provided some guidance, explaining as follows:

> [A]bstract ideas constitute disembodied concepts or truths which are not useful from a practical standpoint standing alone, i.e., they are not useful until reduced to some practical application. More recently, this court explained that the disqualifying characteristic of abstractness must exhibit itself manifestly to override the broad statutory categories of patent eligible subject matter.

---

[8] Presumably, plaintiff does not argue that the phone is involved at step two because the specification (unlike claim 1) makes it clear that a data transaction is "transferred to a local or remote database server which 'explodes' [i.e., sorts] each data transaction into component parts." ('060 patent, col. 2:47-49; 3:32-37) In other words, the telephone is not performing a sorting function, it is a database server which does that, and since the server is not specifically named in claim 1, plaintiff focused on how the telephone is a machine integral to the claimed process. As discussed above, regardless of whether the claim is construed such that the telephone is involved at step two or a "database server" is, the court still finds that the MOTT is not met.

15

*Id.* With this guidance in mind, the court finds that the abstract nature of plaintiff's patent is plainly apparent. The patent, broken down into its component parts, recites steps by which data is obtained, sorted and stored. These steps represent nothing more than a disembodied concept of data sorting and storage and, therefore, the court finds the abstract nature of this patented process to be manifestly apparent.

## V.  CONCLUSION

For the reasons discussed above, the court finds the '060 patent ineligible under 35 U.S.C. § 101 and, therefore, grants defendants' motion for summary judgment. An appropriate order shall issue.